UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 3/31/14

-------------------------------------------------------------------x

RAYMOND C. KNOX,                                  :
                                                  :
                              Plaintiff,          :
                                                  :
              - against -                         :
                                                  :
TOWN OF SOUTHEAST, MICHAEL RIGHTS,                :
Town Supervisor, DWIGHT YEE, Town Councilman,     :
and ROBERT CULLEN, Town Councilman, individually  :
and in their official capacity,                   :
                                                  :
                              Defendants.         :
-------------------------------------------------------------------x

**OPINION AND ORDER**
11 Civ. 8763 (ER)

Ramos, D.J.:

     Plaintiff Raymond C. Knox ("Plaintiff" or "Knox") brings this action against Michael

Rights ("Rights"), Dwight Yee ("Yee"), Robert Cullen ("Cullen") (collectively, the "Individual

Defendants"), and the Town of Southeast (the "Town") (collectively, the "Defendants") stating

claims pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment due process

rights, as well as claims pursuant to the Family and Medical Leave Act ("FMLA"), the

Americans with Disabilities Act ("ADA"); the Age Discrimination in Employment Act

("ADEA"); the New York State Human Rights Law ("NYSHRL"); and the New York Civil

Service Law ("NYCSL").  Doc. 1.  Presently before the Court is Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  Doc. 14.  For the reasons set

forth below, Defendants' motion is GRANTED.

I.   **Factual Background**

     The following facts are undisputed except where otherwise noted.

     Plaintiff is a 72 year-old male who was employed by the Town of Southeast as the

Director of the Parks and Recreation Department (the "Department") for over 23 years.  Defs.'

56.1 Stmt. ¶ 1.[1]  Plaintiff was classified as a "permanent competitive class employee," as he was required to take and pass a Civil Service Exam in order to obtain his position as Director.  *Id.* ¶¶ 5-6.

### a.  Plaintiff's Medical History

After suffering a heart attack in 2000, Plaintiff underwent a triple bypass surgery and had a defibrillator implanted in his chest.  *Id.* ¶ 8.  In February 2010, Plaintiff had surgery to remove and replace the defibrillator.  *Id.* ¶ 9.  During the surgery, Plaintiff developed a bacterial blood infection, which resulted in a five-week hospitalization from May 2010 to July 7, 2010.  *Id.* ¶ 10. Plaintiff returned to work the Monday after his July 7, 2010 discharge from the hospital. Affirmation of Constantino Fragale ("Fragale Decl.") (Doc. 20), Ex. F (Knox Dep. Tr.) at 2:2-10; Declaration of James A. Randazzo ("Randazzo Decl.") (Doc. 15), Ex. F (Knox Dep. Tr.) at 18:7-9, 20:25-21:10.  Thereafter, in August 2010, Plaintiff underwent an overnight procedure to have the defibrillator re-implanted in his chest.  Randazzo Decl., Ex. F at 18:10-21.  Plaintiff returned to work after the August procedure and continued to work for the Town until the end of 2010.  *Id* at 21:8-19.

### b.  Elimination of Plaintiff's Position

In September 2010, Defendant Rights, the Town Supervisor, submitted a preliminary budget for 2011 (the "2011 Budget") to the Town Board.  Defs.' 56.1 Stmt. ¶ 12.  During the budgetary process, Defendant Cullen, a Town Councilman, called the Personnel Director for Putnam County, Paul Eldridge, on two separate occasions to discuss the Town's fiscal crisis and the process for eliminating civil service positions.  Randazzo Decl., Ex. D (Eldridge Dep. Tr.) at 16:2-24.  During the second conversation, Cullen specifically mentioned that the Director of

---

[1] Citations to "Defs.' 56.1 Stmt." refer to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1, Doc. 17.  Citations to "Pl.'s 56.1 Counter-Stmt." refer to Plaintiff's Counter-Statement to Defendants' 56.1 Statement of Material Facts, Doc. 21.

Parks and Recreation was one of the positions, among others, that the Town was considering eliminating for fiscal and budgetary reasons.  Defs.' 56.1 Stmt. ¶ 19.  On the morning of November 18, 2010, Defendant Cullen, along with Town Board member Roger Gross and Town Attorney Will Stephens, informed Plaintiff that his position was being eliminated due to budgetary concerns.  *Id.* ¶¶ 20-21.  Later that evening, the Town Board voted to adopt the 2011 Budget, which eliminated Plaintiff's position, as well as four additional positions within the Town.  *Id.* ¶ 23; *see also* Randazzo Decl., Ex. G.  Defendant Cullen voted in favor of the budget, while Defendants Rights and Yee voted against it.  Randazzo Decl., Ex. G; Defs.' 56.1 Stmt. ¶ 24.  Plaintiff admits that he did not request a hearing regarding the elimination of his position at any time, either before or after the November 18, 2010 vote on the 2011 Budget.  Randazzo Decl., Ex. F at 111:17-20.  It is further undisputed that Plaintiff continued to work as Director of Parks and Recreation until December 31, 2010.  *Id.* at 7:5-7.

Patricia Bohrman, an employee in the Department, testified at her deposition that the functions and duties of the Director position were never eliminated and that since the abolishment of Plaintiff's position, she performed all of the functions and duties previously performed by Plaintiff.  Fragale Decl., Ex. D (Borhman Dep. Tr.) at 8:13-24, 9:15-19.

### c.  **Amendment to the Town Automobile Usage Policy**

On May 20, 1999, a resolution was enacted by the then-existing Town Board which provided, *inter alia*, that only the Highway Superintendent, Town Building Inspector, and Director of Parks and Recreation could take Town vehicles home and keep them overnight without first obtaining permission from the Town Supervisor (the "1999 Automobile Policy").  Defs.' 56.1 Stmt. ¶ 29.  Shortly after Defendants Rights and Yee took office in 2009, they made a proposal to the Town Board to form a Town "vehicle pool," which would require that Town

vehicles be stored in one location and that any employee wishing to use one would be required to report to that location and sign out the vehicle. *Id.* ¶ 30. Thereafter, on August 26, 2010, the Town Board voted to amend the 1999 Automobile Policy to incorporate Defendants Rights' and Yee's "vehicle pool" proposal (the "2010 Automobile Policy"). *Id.* ¶ 33; *see also* Randazzo Decl., Ex. J. The amended policy authorized *only* the Highway Superintendent to take a Town vehicle home without first obtaining permission from the Town Supervisor. Defs.' 56.1 Stmt. ¶ 33; *see also* Randazzo Decl., Ex. J ¶ 4.

In June 2010, prior to the amendment, Defendant Cullen called Plaintiff, who was hospitalized at the time, to apprise him that the Town vehicle at Plaintiff's residence would be relocated to the Highway Department. Defs.' 56.1 Stmt. ¶ 34. Thereafter, Defendant Cullen and Ms. Bohrman picked up the Town vehicle from Plaintiff's home and moved it to the Highway Department. *Id.* ¶ 36. Defendants contend that it was necessary to move the vehicle from Plaintiff's home because while he was out on medical leave, the other employees in the Department were forced to use their personal vehicles to conduct Town business, and would then submit vouchers for reimbursement to the Town.[2] *Id.* ¶ 35 (citing Randazzo Decl., Ex. E (Cullen Dep. Tr.) at 37:9-21).

Plaintiff testified at his deposition that upon his return to work from medical leave, although he would use the Town vehicle "[o]nce in awhile . . . if [he] needed it for some specific reason," because there was "no procedure" for using the vehicle on the weekends or in the evenings, Plaintiff "chose not to use it," and stated that the vehicle was not always "available for [him]." Randazzo Decl., Ex. F at 63:11-66:15. Rather, Plaintiff chose to use his personal

---

[2] Plaintiff "disputes" this allegation on the basis that the other Department employees "never expressed any concern or problem" to him in using the vehicle as a result of it being at Plaintiff's home. Pl.'s 56.1 Counter-Stmt. ¶ 35 (citing Fragale Decl., Ex. F at 58). However, that the Department employees never "expressed any concern" to Plaintiff does not contradict the Defendants' contention that the employees did, in fact, submit vouchers for reimbursement to the Town for the use of their personal vehicles.

vehicle to conduct Town business on a daily basis. *Id.* at 64:2-3, 90:25-91:3. Plaintiff thereafter requested to be reimbursed for the costs associated with using his personal vehicle, however, Defendants denied Plaintiff's requests. *Id.* 90:25-94:12.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some

metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.

2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving

party must set forth significant, probative evidence on which a reasonable fact-finder could

decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477

U.S. 242, 256-57 (1986)).

## III.   Analysis

Plaintiff claims that Defendants acted in bad faith and violated his due process rights, as

well as discriminated against him on various bases[3] when they took the following actions:  (i)

eliminated the Director of Parks and Recreation position; (ii) amended the Automobile Policy;

and (iii) refused to reimburse Plaintiff for the mileage he incurred as a result of his use of his

personal vehicle for Town business purposes.[4]  Defendants, on the other hand, argue that they are

entitled to summary judgment on Plaintiff's claims because it is undisputed that Plaintiff's

---

[3] In his opposition papers, Plaintiff also appears to argue that Defendants retaliated against him for comments that he made during an August 26, 2010 and November 4, 2010 Board meeting to the effect that he felt that he was "being discriminated against and singled out." Pl.'s Mem. L. Opp. (Doc. 22) 26-27. Although Plaintiff characterizes this claim as a retaliatory discharge under the ADA, ADEA and NYSHRL, Plaintiff solely relies on case law concerning retaliation claims pursuant to Title VII where the employee complains that he was retaliated against for "complaining of prohibited employment discrimination." *Id.* (citing *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). Even assuming Plaintiff appropriately labeled his claim, it would nevertheless fail, as he has failed to come forward with any evidence demonstrating a causal connection between the protected activity and the adverse employment action. *See Cifra*, 252 F.3d at 216. Here, Plaintiff relies on the "temporal proximity" between the protected activity and his termination. As discussed in detail *infra*, the Court finds that the time between the alleged protected activity—on August 26 and November 4, 2010—and the conclusion of Plaintiff's employment with the Town on December 31, 2010 is insufficient to support a claim of retaliation.

[4] In support of his discrimination claims, Plaintiff also alleged the following in his Complaint:  (i) that Plaintiff "sensed hostility" from Defendant Yee regarding Plaintiff's use of compensation time, Compl. ¶ 24; and (ii) that Plaintiff's vacation time was wrongly reduced, *id.* ¶¶ 27, 29.  However, in opposing Defendants' motion for summary judgment, Plaintiff failed to respond to (or even acknowledge) Defendants' arguments concerning these allegations.  Accordingly, to the extent Plaintiff intended to base any of his various claims on the allegations concerning compensation and vacation time, those theories of liability are deemed abandoned.  *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases where courts dismissed claims as abandoned where plaintiff failed to address them in opposing defendant's dispositive motion), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012).

position was eliminated "strictly because of the Town's economic circumstances," and that "none of the other actions taken by the Town violated Plaintiff's constitutional or statutory rights."  Defs.' Mem. L. (Doc. 16) 1-2.  Moreover, Defendants argue that even assuming Plaintiff's state or federal rights were violated, the Individual Defendants are immune from suit under the doctrine of absolute legislative immunity.  *Id.* at 22-23.

### a. The Individual Defendants are Immune from Suit Under the Legislative Immunity Doctrine

The Individual Defendants argue that they are entitled to absolute legislative immunity from liability for Plaintiff's claims because their alleged wrongful actions were undertaken in their capacity as members of the Town Board and were therefore legislative in nature.  Defs.' Mem. L. 22-23.  In response, Plaintiff argues that Defendants acted in an administrative capacity—rather than a legislative capacity—when they took the alleged wrongful and discriminatory actions against Plaintiff and are therefore not protected by the legislative immunity doctrine.[5]  Pl.'s Mem. L. Opp. 27.

The Court finds that the Individual Defendants' actions in amending the Automobile Policy and eliminating Plaintiff's position were clearly legislative in nature and, accordingly, Defendants are immune from liability for those actions.[6]  Local legislators, like regional, state

---

[5] Plaintiff also argues that the Individual Defendants are not entitled to legislative immunity for the additional reason that it was not objectively reasonable for them to believe that their actions would not violate Plaintiff's clearly-established constitutional rights.  Pl.'s Mem. L. Opp. 28.  However, in making such an argument, Plaintiff relies upon case law concerning the applicability of *qualified* immunity, not legislative immunity.  *See id.* (citing *Weyant v. Okst*, 101 F.3d 845, 857-58 (2d Cir. 1996); *Almonte v. City of Long Beach*, 478 F.3d 100, 108-09 (2d Cir. 2007); *Glenview Const., Inc. v. Bucci*, 165 F. Supp. 2d 545, 554-55 (S.D.N.Y. 2001))).  In the context of determining whether Defendants' actions were legislative in nature for purposes of determining whether legislative immunity should apply, the question of the objective reasonableness of Defendants' actions is immaterial.  Accordingly, the Court does not consider Plaintiff's argument as to the reasonableness of Defendants' beliefs on the issue of the applicability of legislative immunity.

[6] The legislative immunity doctrine only bars suits against municipal officials when those officials are sued in their personal capacity; it does not apply to official-capacity suits.  *See Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73-74 (2d Cir. 1992).  Accordingly, the Individual Defendants are only immune from liability to the extent Plaintiff sues them in their *personal* capacity.

and federal legislators, are entitled to absolute immunity from civil liability for their legislative actions. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). Legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Id.* at 54 (citation omitted). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* (holding that the city official defendants were immune from liability for Plaintiff's claims where their "acts of voting for the ordinance eliminating [plaintiff's] office were, in form, quintessentially legislative," and noting that the ordinance at issue "bore all the hallmarks of traditional legislation," in that it "reflected a discretionary, policymaking decision implicating the city's budgetary priorities and its services to constituents"). Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity "because such decisionmaking is no different in substance from that which is enjoyed by other actors." *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210-11 (2d Cir. 2003) (holding that defendants, members of the Ellington Board of Education, were not entitled to legislative immunity where the Board refused to accept the resignation of another teacher (Berkowitz) and rehire plaintiff to fill the resulting vacancy, upon a finding that the Board "did not engage in the kind of broad, prospective policymaking that is characteristic of legislative action," and that the Board's decision to "table" the issue of Berkowitz's resignation "was only directed to [Berkowitz's] situation and did not implicate any Board policy") (citing *Forrester v. White*, 484 U.S. 219, 229-30 (1988)); *accord Almonte v. City of Long Beach*, 478 F.3d 100, 108 (2d Cir. 2007) ("A personnel decision is administrative in nature if it is directed at a particular employee or employees, and is not part of a broader legislative policy."). The Second Circuit has made clear, however, that such a holding does *not* suggest that "decisions regarding the elimination of a class

8

of jobs for budgetary or policy reasons would not be legislative in nature simply because they relate to employment." *Harhay*, 323 F.3d at 211 (citing *Rini v. Zwirn*, 886 F. Supp. 270, 282-83 (E.D.N.Y. 1995) (board members who voted to eliminate a class of jobs due to budgetary concerns were protected by legislative immunity)).  Rather, "it is the *nature* of the act that [courts] examine to determine whether legislative immunity applies."  *Id.* (emphasis added).

Here, Defendants' actions of voting on the 2011 Budget eliminating Plaintiff's position, as well as four additional positions within the Town, for budgetary and efficiency reasons— discussed in further detail *infra*—were "quintessentially legislative."  *Bogan*, 523 U.S. at 55. The passage of the 2011 Budget was clearly not an administrative personnel decision directed solely at Plaintiff and his employment.  Rather, the Budget was part of a "broader legislative policy" that, for legitimate budgetary and efficiency purposes, eliminated various positions within the Town.  Moreover, although Plaintiff alleges discriminatory motive or purpose on the part of Defendants, case law is clear that in deciding whether an act is legislative or administrative in nature, the determinative factor is the *nature* of the act, and not the motive or intent of the official performing it.  *See id.* at 54.

Plaintiff appears to argue that because he was actually terminated on the morning of November 18, 2010—prior to the adoption of the 2011 Budget—Defendants are not entitled to legislative immunity for their actions.  Pl.'s Mem. L. Opp. 27.  In so arguing, Plaintiff relies on case law holding that where a defendant terminates an employee *prior to* the elimination of the employee's position through legislative action, the earlier termination is "an administrative act that legislative immunity does not protect."  *Jessen v. Town of Eastchester*, 114 F.3d 7, 8 (2d Cir. 1997) (per curiam) (holding that defendants were not entitled to legislative immunity where defendants, "acting pursuant to a conspiracy," told plaintiff that he was fired and ordered him to

leave his office and four days later, "caused the Town Board to pass a motion abolishing [plaintiff's] position").  As discussed in more detail *infra*, however, the Court finds that Plaintiff was *not* terminated on the morning of November 18, 2010.  Rather, he was merely notified by Defendant Cullen and several non-parties that *if* the proposed 2011 Budget was passed at the Town Board meeting that evening, it would have the effect of abolishing Plaintiff's position.  Thus, the facts at issue here are entirely distinguishable from those at play in *Jessen*, where the defendants fired the plaintiff pursuant to a "conspiracy" and thereafter "caused" the Town Board to pass a motion abolishing plaintiff's position.  Accordingly, as Plaintiff was not "fired" pursuant to a discretionary personnel decision of the Defendants, but rather was terminated as a result of his position being abolished by way of legislative action by the Town Board, Defendants are entitled to absolute legislative immunity with respect to the elimination of Plaintiff's position.

For the reasons set forth above, the Court similarly finds that Defendants are entitled to legislative immunity with respect to the passage of the 2010 Automobile Policy.  As with the adoption of the 2011 Budget, the passage of the 2010 Automobile Policy by the Town Board was clearly a legislative act in nature.  The amendment to the policy affected *all* Town employees, and was not specifically directed at Plaintiff.  Accordingly, the Individual Defendants are entitled to legislative immunity with respect to the passage of the 2010 Automobile Policy.[7]

---

[7] With respect to Defendants' denial of Plaintiff's requests for mileage reimbursement, the Court finds that Defendants are not entitled to legislative immunity with respect to that action, as it constitutes *enforcement*, rather than legislation.  *See S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 558 (D. Conn. 2008) (citing *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736 (1980) (holding that the doctrine of legislative immunity did not bar prospective injunctive relief against the chief justice of the Virginia Supreme Court insofar as he was acting to enforce, rather than legislate, disciplinary rules); *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1423 (4th Cir. 1983) ("When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity.")).  However, to the extent Plaintiff bases his discrimination claims on the Board's denial of his reimbursement requests, those claims are denied, as no discriminatory intent can be inferred from the Board's decision, which was based on the clear wording of the Automobile Policy.  *See infra* n.13.

### b.  Defendants are Entitled to Summary Judgment on Plaintiff's Procedural Due Process Claim

Plaintiff alleges that he had a constitutionally protected property interest in his continued employment as a permanent civil service employee and that he was wrongfully deprived of his position as Director without a pre-termination hearing.  Pl.'s Mem. L. Opp. 13-15.

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by [federal or state law] and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citations omitted).  Defendants do not dispute that Plaintiff had a protected property interest in his continued employment as a "permanent competitive class employee" under the NYCSL.  Defs.' Mem. L. Opp. 12.  Accordingly, the first threshold question for Plaintiff's procedural due process claim is satisfied.

With respect to the second prong of the analysis, an employee with a property interest in his employment is entitled to notice and, typically, a pre-termination hearing.  *Cifarelli v. Vill. of Babylon*, 894 F. Supp. 614, 619 (E.D.N.Y. 1995), *aff'd*, 93 F.3d 47 (2d Cir. 1996) (citing, *inter alia*, *Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985), *modified*, 793 F.2d 457 (2d Cir. 1986)).  Notwithstanding the general rule, the Second Circuit has recognized that a state may decide to make its operations more efficient by abolishing or consolidating positions, and need not routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures.  *Dwyer*, 777 F.2d at 833.  Rather, in such circumstances, the state must grant an employee some kind of pre-termination hearing only where he or she "requests it."  *Id.*  Accordingly, to prevail on a due process claim in this context, the plaintiff must show that he made a timely request for a pre-termination hearing.  *Id.*; *see also Cifarelli*, 894 F. Supp. at 621.

Although Plaintiff concedes that he never requested a hearing concerning his termination, Randazzo Decl., Ex. F at 111:17-20, he contends in his opposition papers that he was not afforded sufficient time to request such a hearing prior to his termination.  Pl.'s Mem. L. Opp. 14-15.  Courts in this Circuit have found that where a plaintiff was not given sufficient time to request a hearing between being notified of the termination and the actual termination, he may be entitled to summary judgment on that basis, as the defendants' failure to provide adequate notice "effectively deprived plaintiff of his right to a pre-termination hearing."  *Cifarelli*, 894 F. Supp. at 621 (holding that notice of a "few hours" was insufficient time to allow plaintiff to make a request for a pre-termination hearing).

Here, it is undisputed that Defendants notified Plaintiff that his position was being eliminated on the morning of November 18, 2010.  Defs.' 56.1 Stmt. ¶¶ 20-21.  Plaintiff argues that since he was notified of the decision within hours of the adoption of the 2011 Budget, he was not afforded a reasonable opportunity to request a pre-termination hearing.  Pl.'s Mem. L. Opp. 15.  Defendants, on the other hand, contend that the legally relevant interval is between the time that Plaintiff received notice of his termination—November 18, 2010—and the time that his employment officially ended—December 31, 2010.  Defs.' Mem. L. 15.

The Court agrees with Defendants that the relevant time period for determining whether Plaintiff had sufficient time to request a pre-termination hearing is the time between his notification and the actual conclusion of his employment with the Town, rather than the passage of the 2011 Budget.  The cases upon which Plaintiff relies are therefore distinguishable, as in those cases, the plaintiffs were formally terminated very shortly after receiving notice and, in some instances, the same day. *Cf. Cifarelli*, 894 F. Supp. at 621 ("Cifarelli was notified that the full-time position would be abolished and that he would be terminated no more than a '*few*

*hours*' before the Village's decision was formalized.") (emphasis added); *Brennan v. Straub*, 246 F. Supp 2d 360, 367 (S.D.N.Y. 2003) (holding that issues of fact existed as to whether plaintiff had adequate time to request a pre-termination hearing where plaintiff was "fired" and "unceremoniously asked to leave the building at once" and had all of her "Department items (identification, pass and keys) . . . taken from her prior to her departure on that day" four days prior to the hearing at which her position was formally eliminated).   Here, on the other hand, Plaintiff was notified on November 18, 2010 of the abolishment of his position, effective January 1, 2011, and continued to work for the remainder of the year.   He therefore had approximately six weeks during which he could have requested a pre-termination hearing.[8]   Accordingly, Plaintiff's undisputed failure to request a hearing requires that his procedural due process claim be dismissed.

### c.  As Plaintiff has Failed to set Forth any Evidence of Bad Faith on the Part of Defendants, Plaintiff's Claim Pursuant to the NYCSL must be Dismissed[9]

Under New York law, it is well-settled that a public employer may abolish civil service positions for purposes of economy or efficiency.   *Cifarelli*, 93 F.3d at 51 (quoting *Bianco v. Pitts*, 200 A.D.2d 741, 607 N.Y.S.2d 78, 79 (2d Dep't 1994)).   A position may not, however, be abolished as a "subterfuge to avoid the statutory protection afforded to civil servants before they are discharged."   *Id.* (quoting *Bianco*, 607 N.Y.S.2d at 79).   One who challenges the abolishment

---

[8] Moreover, although it is not determinative of the issue, the Court notes that Plaintiff did, in fact, attend and speak at the November 18, 2010 Town Board meeting concerning the vote on the 2011 Budget.  Randazzo Decl., Ex. F at 108:9-25.

[9] Plaintiff claims that Defendants violated his substantive due process rights by terminating him from his civil service employment in bad faith.  Pl.'s Mem. L. Opp. 7.  Case law is clear, however, that the NYCSL is dispositive of Plaintiff's claim.  *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).  Indeed, Plaintiff fails to cite to one case in which the court analyzed a similar bad faith claim under the rubric of substantive due process.  Rather, the majority of cases relied upon by Plaintiff, in which the plaintiffs complain that their civil service employment was terminated in bad faith, involve claims pursuant to the NYCSL.  *See, e.g. Matter of Rosenthal v. Gilroy*, 208 A.D.2d 748, 748-49 (2d Dep't 1994); *Matter of Vasquez v. Town Bd. of Town of Waterford*, 72 A.D.2d 883 (3d Dep't 1979); *Matter of Smith v. Mac Murray*, 52 A.D.2d 637, 638 (2d Dep't 1976).

of a position has the "burden of showing that there was not a *bona fide* financial reason to abolish his position, or that a financial saving was not accomplished by the elimination of the position, or that another person was hired in his place, or some other indicia of bad faith." *Nauta v. City of Poughkeepsie, N.Y.*, 610 F. Supp. 980, 982 (S.D.N.Y. 1985) (citing *Turner v. Berle*, 61 A.D.2d 712, 714-15 (3d Dep't 1978)).  New York law makes clear that "bad faith requires a dishonest purpose."  *Cifarelli*, 93 F.3d at 52 (citing New York cases).

Here, Plaintiff admits that he was aware of the Town's fiscal situation and its need to eliminate positions at the time that the 2011 Budget was passed.  Defs.' 56.1 Stmt. ¶ 13. However, he contends that the Town's budgetary concerns were not the true motivation for the elimination of his position and, rather, proffers various grounds for the assertion that his termination was made in bad faith and for improper purposes.  First, Plaintiff argues that Defendants' bad faith can be inferred from the fact that Ms. Bohrman—an existing Department employee—took over Plaintiff's duties after his position was abolished.  Pl.'s Mem. L. Opp. at 9-10.  However, New York courts have held that the "assumption of the duties of [plaintiff's] abolished position by another employee, in itself, is not proof of bad faith."  *Shields v. Dinga*, 222 A.D.2d 816, 818 (3d Dep't 1995) (citation omitted).  Likewise, the fact that others of less seniority than Plaintiff retained their positions and assumed Plaintiff's duties does not give rise to an inference of bad faith.  *See Piekielniak v. Axelrod*, 92 A.D.2d 968, 969-70 (3d Dep't 1983) (citations omitted), *appeal denied*, 59 N.Y.2d 603 (1983).  The cases relied upon by Plaintiff in support of his position are inapposite, as they concern the distinguishable situations in which a *new* employee is hired to perform the duties of a terminated employee under a different position title, *see Matter of Rosenthal*, 208 A.D.2d at 749; *Matter of Vasquez*, 72 A.D.2d 883, or in which an employee who was not appointed in accordance with the NYCSL begins performing the

duties previously performed by the terminated civil-service employee.[10]  *See Folkes v. Hushion*, 283 N.Y. 536, 539 (N.Y. 1940) (per curiam) ("A position is not effectively abolished where a person not appointed in accordance with the provisions of the [NYCSL] is employed to perform the duties formerly performed by the holder of the position."); *Matter of Smith*, 52 A.D.2d at 638.

Next, Plaintiff asserts that Defendants' bad faith can be inferred from the fact that he was the only member of the Department with a master's degree and that the two remaining members of the Department—Ms. Bohrman and Ms. Gallipani—did not hold four-year college degrees, which, according to Plaintiff, is a requirement of the Director position.[11]  Accordingly, Plaintiff argues that Defendants' decision to terminate him, rather than one of the other two Department employees, demonstrates Defendants' bad faith.  Pl.'s Mem. L. Opp. 12.  This argument also does not raise a genuine issue of material fact as to Defendants' proffered motivation.  As addressed above, while Ms. Bohrman took on some duties and responsibilities previously handled by Plaintiff, Plaintiff does not contend, and there is no evidence in the record to suggest, that either Ms. Bohrman or Ms. Gallipani formally replaced Plaintiff as "Director."[12]  Randazzo Decl., Ex. C (Knox 50-h Tr.) at 37:15-38:20; Fragale Aff., Ex. D at 8:2-7.  Contrary to Plaintiff's contention, it is therefore immaterial whether they held four-year college degrees.  Moreover, as addressed in more detail below, Plaintiff has offered no evidence tending to rebut or disprove

---

[10] Although Plaintiff contends that Ms. Bohrman was "not appointed to be a Director of Recreation," Pl.'s Mem. L. Opp. 9, he does not suggest or present any evidence establishing that either Ms. Bohrman or Ms. Gallipani were not appointed in accordance with the NYCSL.  Plaintiff has therefore failed to satisfy his burden of coming forward with evidence sufficient to raise a genuine issue of material fact with respect to Ms. Bohrman's subsequent assumption of Plaintiff's duties.

[11] The Court notes that the *only* evidence Plaintiff submits in support of his assertion that a four-year college degree is a requirement of the Director position is his own, self-serving affidavit.  Fragale Decl., Ex. G ¶ 4.

[12] Ms. Gallipani was subsequently terminated when the Town Board adopted the 2012 Budget, which eliminated an additional four positions within the Town.  Defs.' 56.1 Stmt. ¶ 25 (citing Randazzo Decl., Ex. E at 62:20-63:6).

Defendant Cullen's unequivocal testimony that the Board's motivation in eliminating Plaintiff's position was to promote efficiency within the Department.  Specifically, Cullen testified that Defendants "looked at the departments and tried to figure out where there was redundancy . . . [and] if layoffs had to occur in certain departments, where it would have the least effect on the staff members in the departments."  Randazzo Decl., Ex. E at 15:9-20.  That Plaintiff was allegedly more educated than his colleagues in the Parks and Recreation Department simply does not give rise to the inference that Defendants' decision to abolish the Director position was taken in bad faith or for a dishonest purpose.

Finally, Plaintiff points to the fact that he was the lowest paid employee in the Department, and that the Town Board did not consider employees' salaries when determining which positions to abolish.  Pl.'s Mem. L. Opp. 11-12.  Although Defendant Cullen testified that the Board did not consider the Department employees' salaries in deciding which position to eliminate, Fragale Aff., Ex. C at 22:20-23:3, he stated that Plaintiff's position was abolished for the purpose of promoting efficiency and reducing redundancy within the Department. Specifically, at the time of the vote on the 2011 Budget, in addition to Plaintiff, the Department consisted of Ms. Bohrman and Ms. Gallipani, both Recreation Leaders who reported to Plaintiff. Defendants believed it would "run smoother" to have "two equal members with the same job title working [in] the Recreation Department" (i.e. eliminating the Director position) than have "a supervisor of only one employee" (i.e. eliminating one of the two Recreation Leader positions).  Id. at 22:5-23:11.  Plaintiff has pointed to absolutely no evidence in the record to refute Defendants' proffered reason for the abolishment of Plaintiff's position, or to suggest that the reason set forth by Defendant Cullen at his deposition was pretextual or otherwise untrue. Case law is clear that a public employer, like the Town of Southeast, may abolish civil service

positions "for purposes of . . . efficiency." *Cifarelli*, 93 F.3d at 51.  As Defendant Cullen's testimony makes clear that Defendants had a legitimate, efficiency-related reason for abolishing Plaintiff's position, and as Plaintiff has failed to come forward with *any* evidence from which the inference can be drawn that the proffered reason is pretextual, Plaintiff has failed to satisfy his burden of proving bad faith.  Accordingly, Plaintiff's claim under the NYCSL is dismissed.

### d.  Defendants are Entitled to Summary Judgment on Plaintiff's Discrimination and Retaliation Claims Pursuant to the FMLA, ADA, ADEA and NYSHRL

#### i.  Legal Standard

Plaintiff's claims of employment discrimination and retaliation are analyzed under the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See DiGirolamo v. MetLife Group, Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (noting that ADEA and NYSHRL claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas*); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (applying *McDonnell Douglas* to ADA discrimination claim); *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam) (applying *McDonnell Douglas* to FMLA retaliation claim).

Under *McDonnell Douglas*, a plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate, non-discriminatory reason for the adverse employment action; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is pretextual.  *Sista*, 445 F.3d at 169.

#### ii.  The 2010 Automobile Policy does not Constitute an Adverse Employment Action

To the extent Plaintiff bases his retaliation and/or discrimination claims pursuant to the FMLA, ADA, ADEA and NYSHRL on the Town's adoption of the 2010 Automobile Policy,

17

Plaintiff's claims must be dismissed, as he has failed to show that the Policy constituted an "adverse employment action."  As discussed in more detail *infra*, to state a *prima facie* case of employment discrimination under any of the above-mentioned statutes, Plaintiff must demonstrate that he was subject to an adverse employment action.  Specifically, Plaintiff argues that Defendants retaliated against him on various bases by amending the Automobile Policy to preclude him from keeping the Town vehicle at his home overnight and by generally preventing his reasonable access to the vehicle.[13]  Pl.'s Mem. L. Opp. 17-18.

An adverse employment action is defined as a "materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  A materially adverse change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted). A materially adverse change may be indicated by, *inter alia*, "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Id.* (internal quotation marks and citation omitted).  Although "adverse employment actions extend beyond readily quantifiable losses, 'not everything that makes an employee unhappy is an actionable adverse

---

[13] To the extent Plaintiff bases his discrimination claims on Defendants' denial of his requests for mileage reimbursements, the claims must fail on that basis as well.  The language of the 2010 Automobile Policy is clear that an employee must obtain *written prior approval* from both their supervisor and the Town Supervisor before using the employee's personal vehicle for Town business purposes.  Randazzo Decl., Ex. J ¶¶ 1 ("Employees may not drive vehicles for the Town of Southeast without prior written approval of their supervisor and the Town Supervisor."), 11 ("Employees *who are authorized* to use their personal vehicles for approved business purposes will receive mileage allowance as adopted yearly by the Town Board.") (emphasis added).  Plaintiff admitted at his deposition that he "chose not to use" the Town vehicles because, according to him, there was no procedure in place for accessing the Town vehicles during evening and weekend hours.  Randazzo Decl., Ex. F at 63:11-64:3.  Instead, Plaintiff used his personal vehicle to conduct Town business without first obtaining approval from the Town Supervisor, in direct contravention of the Automobile Policy.  Randazzo Decl., Ex. E at 53:24-55:2.  Accordingly, as Defendants' denial of Plaintiff's requests for mileage reimbursement was clearly based on the express language and protocols set forth in the 2010 Automobile Policy—which Plaintiff undisputedly failed to abide by—no discriminatory intent can be inferred from the Board's act in refusing to reimburse Plaintiff.

action.'"  *Sank v. City Univ. of New York*, No. 94 Civ. 0253 (RWS), 2003 WL 1807142, at *10

n.24 (S.D.N.Y. Apr. 7, 2003) (quoting *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002)),

*aff'd*, 112 F. App'x 761 (2d Cir. 2004).

   Here, being denied the ability to keep the Town vehicle overnight cannot be characterized

as an "adverse employment action" under even the most liberal reading of the phrase.  Although

"adverse employment actions" may include lesser actions than those stated above—i.e.,

termination, demotion, etc.—such lesser actions must have the effect of changing "the total

circumstances of [the employee's] working environment . . . to become unreasonably inferior

and adverse when compared to a typical or normal, not ideal or model, workplace."  *Phillips*, 278

F.3d at 109.  Plaintiff's inability to use the Town vehicle to commute to and from work did not

have the effect of causing his working environment to become "inferior" or "adverse" as

compared to the "normal" workplace.  Indeed, the record indicates that Plaintiff was the *only*

employee in the Parks and Recreation Department to ever have been granted the convenience of

keeping the car at his home overnight without the prior consent of the Town Supervisor.

Randazzo Decl., Exs. I ¶ 4; F at 41:21-43:3.

   Although a "significant change in benefits" may constitute an adverse employment

action, *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004), here, Plaintiff has

pointed to *no* evidence in the record indicating that access to the Town vehicle was part of the

terms or conditions of Plaintiff's employment, or even that it was a guaranteed employment

benefit.  Even if 24-hour access to the Town vehicle *was* an agreed-upon benefit of Plaintiff's

employment, Plaintiff's claim would still fail, as the amendment to the Automobile Policy

simply does not constitute a *significant* change in benefits.  Rather, it is more aptly characterized

as a "mere inconvenience," which is insufficient to support a claim of employment

discrimination. *See Monica v. New York City Off-Track Betting Corp.*, No. 93 Civ. 6371 (RPP), 1995 WL 117879, at *4 (S.D.N.Y. Mar. 20, 1995) (citation omitted). Indeed, the 2010 Automobile Policy did not preclude or forbid Plaintiff's use of the Town vehicle; rather, Plaintiff was still entitled to use the Town vehicle utilizing the procedures and protocols set forth in the Policy. Randazzo Decl., Ex. F at 54:18-55:6. In fact, Plaintiff testified that Defendant Rights specifically told Plaintiff that the Town vehicle was "available to [Plaintiff] whenever [he] want[ed]." *Id.* at 65:19-66:11. Furthermore, the Court notes that pursuant to the 2010 Automobile Policy, the Town Building Inspector who, like Plaintiff, had previously been permitted to keep the vehicle overnight without prior permission pursuant to the 1999 Policy, was similarly no longer permitted to keep the Town vehicle overnight, thereby refuting Plaintiff's claim of retaliatory animus. *Id.* at 55:18-56:6.

Accordingly, for the reasons set forth above, although the amendment to the Town's vehicle policy may have made Plaintiff "unhappy," it cannot be characterized as an adverse employment action giving rise to a claim of discrimination or retaliation.

### iii.  Plaintiff's Termination

Plaintiff's discrimination claims are also based on the Town's decision to abolish his position in the 2011 Budget. Although termination is clearly an adverse employment action, Plaintiff nevertheless fails to state a *prima facie* case of retaliation or discrimination on the bases of disability, age or medical leave, as he cannot demonstrate that the adverse action occurred under circumstances giving rise to an inference of retaliatory intent.

#### 1.  Plaintiff has Failed to Demonstrate a Causal Connection between the Protected Activity and his Termination

With respect to Plaintiff's FMLA and ADA claims, Plaintiff appears to concede that the record is devoid of any direct evidence indicating that the Town was motivated by retaliatory

animus in abolishing Plaintiff's position; rather, Plaintiff relies on the alleged temporal proximity between his disability and medical leave and the adoption of the 2011 Budget.  Pl.'s Mem. L. Opp. 16-17, 22.

The FMLA provides that an eligible employee be permitted to take unpaid leave for up to twelve weeks for a serious medical condition, 29 U.S.C. § 2612(a)(1), and prohibits an employer from "discriminating or retaliating against an employee . . . for having exercised . . . [his] FMLA rights."  29 C.F.R. § 825.220(c).  The ADA similarly prohibits discrimination against a "qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To establish a *prima facie* case of discrimination or retaliation under both the FMLA and the ADA, a plaintiff must establish that the adverse employment action at issue occurred under circumstances giving rise to an inference of retaliatory animus.  *See Sista*, 445 F.3d at 169 (setting forth elements of ADA retaliation claim); *Potenza*, 365 F.3d at 168 (setting forth elements of FMLA retaliation claim).

The Second Circuit has held that "[t]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'"  *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (citation omitted).  However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four-month period insufficient)).  Indeed, many of the decisions in this Circuit that have addressed the issue have held that a passage of more than two months between the protected activity and the adverse employment

action does not allow for an inference of causation.  *See, e.g., Garrett v. Garden City Hotel, Inc.,* No. 05 Civ. 0962 (JFB), 2007 WL 1174891, at *20-21 (E.D.N.Y. Apr. 19, 2007) (holding that period of two-and-a-half months between plaintiff's "most recent complaint of discrimination" and her discharge "preclude[d] a finding of a causal connection between the protected activity and the adverse employment action."); *Ruhling v. Tribune Co.,* No. 04 Civ. 2430 (ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan.3, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line") (collecting cases); *Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (holding that period of two-and-a-half months "is hardly the close proximity of time contemplated by [the Second Circuit] for allowing a plaintiff to establish the 'causal connection' element of [a] retaliation claim").  Here, Plaintiff was disabled and on medical leave from May 2010 until his return to work in July 2010[14]; the vote on the Town budget for 2011 took place on November 18, 2010; and Plaintiff's employment with the Town officially concluded on December 31, 2010.  Accordingly, under the clearly-established case law in this Circuit, even accepting the November 18, 2010 date as the date of the "adverse employment action," Plaintiff's claim still fails, as a passage of four months is insufficient to establish a causal connection between the protected activity and the adverse action.  Accordingly, as Plaintiff has failed to state a *prima facie* claim of retaliation under the

---

[14] In making the "temporal proximity" argument, Plaintiff states, for the first time in his opposition brief, that his medical leave ended in August 2010.  Pl.'s Mem. L. Opp. 18-19.  However, during the course of this litigation, Plaintiff has consistently maintained that his leave ended shortly after his release from the hospital on July 7, 2010.  Compl. ¶ 44-45; Fragale Decl., Ex. F at 20:25-21:16; Randazzo Decl., Ex. F at 17:7-18:19.  Indeed, Plaintiff's own *affidavit* submitted in opposition to Defendants' motion for summary judgment clearly states that he returned to work from medical leave on July 7, 2010.  Fragale Decl., Ex. G ¶ 9.  Although it is undisputed that Plaintiff underwent an overnight medical procedure sometime in August 2010, he has not submitted any evidence indicating that he took any medical leave time in August.  Accordingly, as Plaintiff has failed to come forward with any evidence indicating that he engaged in any protected activity in August, the Court will not consider it on Defendants' motion for summary judgment.  Moreover, the Court notes that even if it were to rely on the August date, Plaintiff's claim would still fail, as courts in this Circuit have consistently held that lapses of more than two months are insufficient to support an inference of causation.

22

FMLA or the ADA,[15] Defendants are entitled to summary judgment on those claims.

## 2. Age Discrimination in Employment Act (ADEA) Claim

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *see id.* § 631(a) (establishing that the ADEA applies only to individuals who are at least 40 years old). A plaintiff may prove that his discharge was "because of" his age by showing that his "age played a motivating role in, or contributed to, the employer's decision." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162 (2d Cir. 1998) (citations omitted). He "may prove that the forbidden animus 'was a motivating factor' through the presentation of either 'direct' or 'circumstantial' evidence." *Id.* at 162 (citation omitted).

In support of his ADEA claim, Plaintiff alleges that an inference of discrimination should be drawn from certain ageist remarks made by Defendants. Pl.'s Mem. L. Opp. 23-25. For the reasons set forth below, the Court finds that Plaintiff has failed to come forward with admissible evidence demonstrating that Plaintiff's termination occurred under circumstances giving rise to an inference of age discrimination.

First, Plaintiff testified at his deposition that after he was notified that his position would be abolished on November 18, 2010, Ms. Bohrman told him "between tears" that "they [told] her . . . that Ray [Knox] is not going to be employed after December 31st, we are cutting his

---

[15] With respect to his ADA claim, Plaintiff makes the additional argument that an inference of discrimination can be drawn from Defendant Rights' comments regarding Plaintiff's health during an August 26, 2010 Town Board meeting. At that meeting, Mr. Rights stated that "Mr. Knox is with us…Ray [Knox] has not been feeling well so it is a good idea to accommodate him." Fragale Decl., Ex. I. Plaintiff argues that "[a]fter this comment, the Board preceded to change the Town's Vehicle use policy, specifically eliminating Mr. Knox's ability to take the town vehicle home." Pl.'s Mem. L. Opp. 22. The Court simply does not discern any ill-will or discriminatory meaning from Rights' comment. To the contrary, Rights' comment simply acknowledges Plaintiff's medical condition and indicates a sense of concern for Plaintiff's well-being. Moreover, even assuming Rights' comment could be read as evidencing a discriminatory motive or animus, as the Court has already determined that the 2010 Automobile Policy is not an adverse employment action and cannot provide the basis for a discrimination or retaliation claim, Defendant Rights' comments regarding the Policy are of no moment.

position, and we chose him because he already has a retirement coming to him."  Fragale Decl., Ex. F at 107:16-22.  Plaintiff admitted that Councilman Gross, a non-party to this suit, was the individual who made the alleged statement to Ms. Bohrman.  *Id.* at 107:23-25.  It is well-settled that a court need only consider admissible evidence when ruling on a motion for summary judgment.  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (citations omitted).  Accordingly, in ruling on a motion for summary judgment, "a court will not entertain inadmissible hearsay unsubstantiated by any other evidence" in the record.  *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 566 n.2 (S.D.N.Y. 2010) (citing *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 991)).  Here, Plaintiff offers nothing more than rank hearsay in support of his allegation that certain individuals made ageist remarks about Plaintiff, and, accordingly, the Court declines to consider such statements on Defendants' motion for summary judgment.[16]

Next, Plaintiff cites to the deposition testimony of Defendant Cullen, in which he stated that he was copied on an email from Defendant Yee to the former Town Clerk, Ruth Mazzei, "basically making fun of her because she was . . . in [her] '70s."  Fragale Aff., Ex. C at 57:4-58:5; *see also* Pl.'s Mem. L. Opp. 24.  Moreover, Plaintiff submitted an affidavit by Ms. Mazzei, in which she states that she retired as the Town Clerk in 2011 because of the alleged constant "ageist harassment" she was subjected to by Defendants Rights and Yee.  Fragale Decl., Ex. R ¶

---

[16] Although Plaintiff contends that the out-of-court statements at issue are admissible as an "excited utterance" or as an "admission of a party opponent," Pl.'s Mem. L. Opp. 23, the Court finds that neither of those exceptions to the hearsay rule apply.  An "excited utterance" is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).  Here, Plaintiff testified in his deposition that Ms. Bohrman made the alleged statement to him "between tears" after various individuals, including Defendant Cullen, left his office.  Fragale Decl., Ex. F at 107:16-22.  However, Plaintiff also testified that Ms. Bohrman was "crying before they even got there," and that she was aware that Plaintiff's position would be abolished before even Plaintiff knew.  *Id.* at 106:25-5.  These facts are insufficient to trigger the "excited utterance" provision; that is, to suggest that Ms. Bohrman was under the "stress of excitement caused by the event" (i.e., Mr. Gross' alleged statement to Ms. Bohrman that Plaintiff was going to be terminated) sufficient to provide some guarantee of reliability with regard to Ms. Bohrman's statement.  Moreover, as the alleged out-of-court statements were made by *Ms. Bohrman* and *Councilman Gross*, neither of whom is a party to this action, the hearsay exception for admissions by a party opponent is clearly not applicable.  *See* Fed. R. Evid. 801(d)(2).

2-4.[17]  She claims that Rights and Yee sent her "vicious emails," and that in one of those emails,

Rights asked, "isn't it past time for you to retire?"[18]  *Id.* ¶ 3.

 In response, Defendants characterize Defendants Rights' and Yee's alleged

discriminatory statements as "stray remarks" that are "insufficient to impugn discriminatory

intent on the rest of the Board members," as Rights and Yee "were but two of five members on

the Town Board, and therefore did not have the power to unilaterally make decisions without

concurrence from the majority of the Board."  Defs.' Reply Mem. L. (Doc. 24) 4.  Moreover,

Defendants point out that both Rights and Yee voted *against* adoption of the 2011 Budget

eliminating Plaintiff's position and, accordingly, no inference of discriminatory intent or ageist

animus can be inferred with respect to the Board's passage of the 2011 Budget.  *Id.*

Verbal comments may constitute evidence of discriminatory motivation if a plaintiff can

demonstrate that a sufficient nexus exists between the allegedly discriminatory statement and a

defendant's decision to discharge the plaintiff.  *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512,

518 (S.D.N.Y. 2004).  However, "[s]tray remarks by non-decision-makers or by decision-makers

unrelated to the decision process are rarely given great weight, particularly if they were made

temporally remote from the date of the decision."  *Id.* at 518-19 (quoting *Campbell v. Alliance

Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000)).  The Second Circuit has explained that

"the more remote and oblique the remarks are in relation to the employer's adverse action, the

less they prove that the action was motivated by discrimination."  *Tomassi v. Insignia Fin.

Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (citing *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d

---

[17] Plaintiff also submitted a newspaper article in which Ms. Mazzei described the "ageist harassment" she was subjected to.  Fragale Decl., Ex. N.  However, as the article is clearly inadmissible hearsay, the Court does not consider it on Defendants' motion for summary judgment.  *See Mandal v. City of New York*, Nos. 02 Civ. 1234 (WHP), 02 Civ. 1367 (WHP), 02 Civ. 6537 (WHP), 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006) ("Newspaper articles are usually inadmissible hearsay.").

[18] The Court notes that Plaintiff did not submit to the Court either of the emails to which Cullen and Mazzei refer.

171, 182 (2d Cir. 1992) (describing remarks as "stray" when made "in the workplace by persons

who are not involved in the pertinent decision-making process"); *Rose v. New York City Bd. of

Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (contrasting "the stray remarks of a colleague" with

"comments made directly to" the plaintiff on more than one occasion by someone with

"enormous influence in the decision-making process"); *Slattery v. Swiss Reinsurance Am. Corp.*,

248 F.3d 87, 92 n.2 (2d Cir. 2001) (characterizing remarks as "stray" where they were "unrelated

to [the plaintiff's] discharge"))).   Conversely, "[t]he more a remark evinces a discriminatory state

of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more

probative that remark will be."   *Id.* (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir.

1998) (explaining that the label "stray" is inappropriate where "other indicia of discrimination"

tie the remarks to an adverse employment action); *Kirsch*, 148 F.3d at 162-63 (rejecting the label

"stray" where decision-makers uttered age-related remarks near the time of plaintiff's

discharge)).   District courts in this Circuit have developed a standardized approach for applying

these concepts to individual cases.   In determining whether a remark is probative, courts consider

four factors:   (i) who made the remark (i.e., decision-maker, supervisor, or a low-level co-

worker); (ii) when the remark was made in relation to the employment decision at issue; (iii) the

content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory);

and (iv) the context in which the remark was made (i.e., whether it was related to the decision-

making process).   *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (collecting

cases), *cert. denied*, 131 S.Ct. 1602 (2011).

      The Court finds that the alleged discriminatory remarks made by Rights and Yee to Ms.

Mazzei are isolated, stray remarks which, when considered in the context of all the evidence, are

too "remote and oblique . . . in relation to the employer's adverse action" to permit a reasonable

jury to find for Plaintiff.  *Tomassi*, 478 F.3d at 115.  First, although Rights and Yee are members of the Town Board, and were thus decision-makers on the 2011 Budget abolishing Plaintiff's position, it is undisputed that Rights and Yee voted *against* adoption of the Budget.  Accordingly, no discriminatory intent can be inferred from their alleged comments to Ms. Mazzei with respect to their actions toward Plaintiff.  Moreover, the Court cannot impugn discriminatory intent on the rest of the Board members from the unrelated comments made by Rights and Yee, as there is no evidence in the record that the Board members who voted in favor of the 2011 Budget were motivated in any way by Plaintiff's age.  Although it is unclear from the record how close in time to the vote on the 2011 Budget Defendants Rights' and Yee's comments to Ms. Mazzei were made, it is clear that those comments to *Ms. Mazzei* had no connection or relation the adoption of the 2011 Budget abolishing several positions within the Town.  Finally, the Court notes that Plaintiff has pointed to no evidence in the record that any such ageist comments or harassment were ever made or directed towards *him*.  Accordingly, under such circumstances, the stray and unrelated remarks by Defendants Rights and Yee to Ms. Mazzei are insufficient, without any other evidence of discriminatory intent toward *Plaintiff*, to raise an inference of discrimination.[19]

       Accordingly, as the Court finds that Plaintiff has failed to set forth any undisputed facts from which the inference can be drawn that Defendants discriminated against him because of his

---

[19] Plaintiff also bases his age discrimination claim on the alleged claim that all of the employees whose positions were abolished in 2011 and 2012 were at least forty years old, thereby raising an inference of discriminatory animus on the part of Defendants.  Pl.'s Mem. L. Opp. 25.  However, Plaintiff has failed to support that allegation with *any* evidence from the record, other than his own unsubstantiated affidavit.  Fragale Decl., Ex. G ¶ 2.  Accordingly, as Plaintiff has failed to come forward with any evidence supporting his allegation regarding the age of the employees whose positions were terminated as a result of the 2011 and 2012 budget cuts, such a bare and unsupported allegation is insufficient to raise an inference of discriminatory intent on the part of Defendants.

age, Plaintiff's ADA claim must therefore be dismissed.[20]

## IV.   Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is

GRANTED.  The Clerk of the Court is respectfully directed to terminate the motions and close

this case.  Doc. 14.

It is SO ORDERED.

Dated: March 31, 2014
        New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[20] In addition to the federal claims, Plaintiff also brings an age and disability discrimination claim pursuant to the NYSHRL. Pl.'s Mem. L. Opp. 25.  It is well-settled that the elements of an employment discrimination claim are essentially the same under the NYSHRL and its federal counterparts. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir. 1992).  Accordingly, as the Court has already held that Defendants are entitled to summary judgment on Plaintiff's ADA and ADEA claims, Plaintiffs NYSHRL claim must also be dismissed.